RECEIVED

MAR - 5 2012

AT 8:30_____M
WILLIAM T. WALSH
          CLERK

NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| INNOSPEC FUEL SPECIALTIES, LLC,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>ISOCHEM NORTH AMERICA, LLC,<br><br>　　　　　　Defendant. | Civ. No. 10-1642<br><br>MEMORANDUM OPINION & ORDER |

THOMPSON, U.S.D.J.

　　　　This matter has come before the Court on Defendant Isochem North America, LLC's ("Isochem") Motion to Dismiss [docket # 51] the First Amended Complaint [49] for failure to state a claim upon which relief can be granted. In that Motion and subsequent reply brief [55], Defendant asserts the following arguments: (1) that Innospec Fuel Specialties, LLC's ("Innospec") decision not to pursue relief for many years prevents it from asserting any claim for which relief could be granted; and (2) that Innospec has failed to demonstrate that its claim is plausible or that it has any possibility of success as Innospec's own documents purportedly demonstrate that Isochem paid the full amounts owed in 2005 and that the parties terminated their agreement in 2006. (Def.' s Reply Br., at 1–3). Plaintiff Innospec opposes the Motion, contending that at this stage it has properly and sufficiently stated its claims against Isochem. (Pl.'s Opp'n, at 12). Furthermore, Plaintiff argues that Defendant ignores the appropriate standard in its Motion by introducing affidavits and documents not relied upon in the Amended Complaint and not tested in discovery. (*Id.* at 1–2). For the reasons set forth below, the Court finds that the appropriate course is to convert Defendant's Motion to Dismiss into a Motion for

1

Summary Judgment and provide limited additional discovery for such purpose. *See* Fed. R. Civ. P. 12(b).

## I. BACKGROUND

This matter arises out of a purported breach of an agreement between Plaintiff Innospec and Defendant Isochem pursuant to which Isochem was to pay Innospec commissions and rebates on certain sales. For purposes of this motion the Court considers as true all of Plaintiff's well-pleaded factual allegations. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

Innospec is a distributor of 2-EHN, a chemical fuel additive, in North America. (Am. Compl. ¶ 7). Innospec purchases 2-EHN from Defendant Isochem for distribution to, among others, Exxon Mobil. (*Id.* ¶ 10). In or around October 2004, representatives of Isochem (then named SNPE North America, LLC) and Octel Starreon LLC ("OS")[1] began negotiations concerning an arrangement wherein Isochem would pay OS commissions and freight charges on all deliveries made to Exxon Mobil and provide a "volume rebate" to OS for all 2-EHN purchased by OS from Isochem. (*Id.* ¶ 13). Thereafter, on or around August 17, 2005, the parties entered into the Exxon Mobil Commission Agreement (the "Agreement"), retroactive to January 1, 2005. (*Id.* ¶¶ 18–19). Under the terms of the Agreement, Defendant agreed to pay OS a "$0.04/lb commission on all E/M sales up to 3500 metric tons ["M/T"] ([Exxon Mobil] contract amount)" as well as provide OS a "[r]ebate of $0.017/lb on all volume as long as a minimum of 8000 M/T are purchased per annum." (*Id.* ¶¶ 21–22). Additionally, Isochem agreed to pay for all freight, duty and storage costs from the Isochem facilities in Sarina and/or Lavera on all sales of 2-EHN to Exxon Mobil up to 3500 M/T. (*Id.* ¶ 23). Shortly thereafter, as market

---

[1] Plaintiff is the successor in interest to OS. (Br. Demonstrating Citizenship, Ex. B [18].)

conditions began to deteriorate, representatives of Eurenco[2] began claiming that the rebate under the Agreement only applied to 2005 and not 2006 as previously negotiated by the parties. (*Id.* ¶¶ 24–40). Additionally, around this time, the parties began disputing the price that Innospec was required to pay Eurenco for 2-EHN in 2006 and in subsequent years. (*Id.* ¶¶ 41–45). In the course of these exchanges, Plaintiff alleges it was advised that Innospec and Isochem would "sort [the rebate issue] out after we get the pricing issue resolved." (*Id.* ¶ 46).

On December 12, 2005, the relevant parties met to discuss the disputed pricing and rebate issues. (*Id.* ¶ 48). In the course of that meeting, representatives of Eurenco advised Innospec for the first time that Isochem allegedly read the Agreement to require Innospec to pay Isochem almost $400,000 in commissions. (*Id.* ¶ 49). Innospec allegedly denied this interpretation of the Agreement and reserved its rights to seek additional payments of amounts owed. (*Id.* ¶ 50).

Following that meeting, the parties continued to engage in negotiations concerning the underlying pricing relationship and the scope of the Agreement. Although Innospec carried "a belief that Innospec and Isochem/Eurenco might come to some form of resolution or an arrangement that would resolve all outstanding issues between them, which would include the issues related to the Exxon Mobil Commission Agreement," (*id.* ¶ 50), such an agreement never materialized.

Based on these events, on February 23, 2010, Innospec initiated an arbitration proceeding before the International Chamber of Commerce against Eurenco, claiming that it was owed substantial sums under its distribution agreement. Shortly thereafter, on March 31, 2010, Innospec commenced the present action [1]. Isochem moved to stay this action pending the outcome of the European arbitration, and, in the alternative, moved to dismiss a number of claims in the Complaint [10]. The Court denied the request to stay the action pending

---

[2] Eurenco, as part of the SNPE Group of Companies, manufactures 2-EHN. (*Id.* ¶ 9).

arbitration, but dismissed certain disputed counts [20]. On November 11, 2011, Plaintiff filed a Motion to Amend/Correct its Complaint [45]. On November 14, 2011, Magistrate Judge Bongiovonni granted the Motion [48]. Subsequently on November 15, 2011, Plaintiff filed its Amended Complaint. On December 19, 2011, Isochem filed the present Motion.

## II.   DISCUSSION

On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1947 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler*, 578 F.3d at 210–11. But, the court should disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. at 1949). This requires more than a mere allegation of an entitlement to relief. *Id.* "A complaint has to 'show' such an entitlement with its facts." *Id.* A claim is only plausible if the facts pleaded allow a court reasonably to infer that the defendant is liable for the misconduct alleged. *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 194).

Ultimately, the issue on a Rule 12(b)(6) motion is not whether a plaintiff eventually will prevail, but whether the plaintiff is entitled to offer evidence in support of his or her claims. *See*

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "Dismissal under Rule 12(b)(6) . . . is limited to those instances where it is certain that no relief could be granted under *any* set of facts that could be proved." *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (emphasis added).

      Defendant contends that it is entitled to a Rule 12(b)(6) dismissal because Innospec has failed to demonstrate that its claim is plausible or that it has any possibility of success as Innospec's conduct suggests it has waived its claim and Innospec has failed to provide any proof during discovery that it has preserved its claim. (Def.'s Reply Br. at 5–7, 8–9). Additionally, Isochem argues that Plaintiff's own documents produced in discovery demonstrate that Isochem has paid the full amounts owed under the Agreement. (*Id.* at 9). In support of these claims, Defendant provides three affidavits: one from an executive officer of Isochem, one from an executive officer of Eurenco and lastly an affidavit from defense counsel, each of which either attach or reference various correspondences supporting their account of the contractual negotiations between the parties and/or subsequent discovery efforts. Most of these documents reach far beyond the pleadings and therefore are inappropriately considered on a motion to dismiss.

      As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. *See In re Burlington Coat Factory Sec. Litig.*, 114 F. 3d. 1410, 1426 (3d. Cir. 1997). An exception to the general rule is that a "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment." *Id.* (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Isochem argues that the Court "may 'consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" (Def.'s Br. at 23) (citing, among other cases, *Pension Ben.*

*Guar. Corp. v. White Consol. Indus., Inc*, 998 F.2d 1192, 1196 (3d Cir. 1993)). However, a review of Plaintiff's Amendment Complaint reveals that Innospec does not reference in its Amended Complaint the majority of the documents included in Defendant's submission or appear to base its claims on these documents.

Moreover, reading the complaint in the light most favorable to the Plaintiff, the Court is not convinced that Plaintiff has failed to allege sufficient facts to create a plausible action for breach of contract. Plaintiff details the formation of the Agreement between the parties, (Am. Compl. ¶¶ 13–17); the scope of the Agreement, (*id.* ¶¶ 18–23); the purported breach, (*id.* ¶¶ 24–51); and the damages allegedly sustained based on this breach, (*id.* ¶¶ 53–57). Because many of the allegations in the Amended Complaint require a context specific inquiry and necessitate the development of a more complete factual record before the Court can decided whether, as a matter of law, Plaintiff could prevail of its underlying claims, the Court believes a motion to dismiss may be an inappropriate vehicle to foreclose this action. The plausibility standard of *Iqbal* does not require total certainty. Instead, it is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

Although Defendant invites the Court to simply consider the "three dispositive documents" purportedly created by Plaintiff, (Reply Br. 9–11), the Court does not believe that would be an appropriate use of its case management authority. Defendant has introduced a host of evidence in support of its Motion including testimony that Plaintiff purportedly is only now seeing for the first time. (Pl.'s Opp'n, at 15). Moreover, Plaintiff has identified inconsistencies within the various documents, which the Court believes it should be permitted to explore further. (*See id.* at 15–16). Consequently, the Court concludes that limited discovery as well as additional briefing will assist with resolution of the pending Motion. *See Pension Ben. Guar. Corp.*, 998 F.2d at 1196 ("The reason that a court must convert a motion to dismiss to a summary

6

judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond."). Because a court ordinarily cannot consider matters outside of the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), the Court believes converting this Rule 12(b)(6) motion into a motion for summary judgment pursuant to Rule 56 is an appropriate use of its case management authority. *See* Fed. R. Civ. P. 12(b)(6); *In re Rockefeller Ctr. Properties*, 184 F.3d 280, 287–89 (3d Cir. 1999) (discussing conversion of motions to dismiss into motions for summary judgment).

### III. CONCLUSION

For the reasons set forth above,

IT IS on this ___ day of March, 2012,

ORDERED that the parties engage in additional discovery, as of the entry of this order, related to the issues presented in Defendants' converted Motion for Summary Judgment. Such discovery may include depositions as outlined under the Federal Rules as well as additional requests for the production of documents, interrogatories, etc., as directed by Magistrate Judge Bongiovonni; and it is further

ORDERED that the parties submit simultaneous letter briefs, not to exceed eight (8) pages each, on May 11, 2012, addressing the Motion for Summary Judgment, in light of matters learned in the course of the discovery ordered above and any other subsequent developments.

ANNE E. THOMPSON, U.S.D.J.