NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

INNOSPEC FUEL SPECIALTIES, LLC,

Plaintiff,

v.

ISOCHEM NORTH AMERICA, LLC,

Defendant.

Civ. No. 10-1642

MEMORANDUM OPINION, ORDER & JUDGMENT

THOMPSON, U.S.D.J.

Presently before the Court is Defendant Isochem North America, LLC's ("Isochem") Motion to Dismiss [docket # 51] the First Amended Complaint [49] which has been converted into a Motion for Summary Judgment, *see* (Mem. Op. & Order of Mar. 5, 2012) [56]. Plaintiff Innospec Fuel Specialties, LLC's ("Innospec") opposes the Motion [66]. For the reasons set forth below, the Motion will be granted.

I.    BACKGROUND

This matter arises out of a purported breach of an agreement between Plaintiff Innospec and Defendant Isochem pursuant to which Isochem was to pay Innospec commissions and rebates on certain sales.

Innospec is a distributor of 2-EHN, a chemical fuel additive, in North America. (Am. Compl. ¶ 7). Innospec purchases 2-EHN from Defendant Isochem for distribution to, among others, Exxon Mobil. (*Id.* ¶ 10). In or around October 2004, representatives of Isochem (then named SNPE North America, LLC) and Octel Starreon LLC ("OS")[1] began negotiations concerning an arrangement wherein Isochem would pay OS commissions and freight charges on

---
[1] Plaintiff is the successor in interest to OS. (Br. Demonstrating Citizenship, Ex. B [18].)

1

all deliveries made to Exxon Mobil and provide a "volume rebate" to OS for all 2-EHN purchased by OS from Isochem. (*Id.* ¶ 13). Thereafter, on or around August 17, 2005, the parties entered into the Exxon Mobil Commission Agreement (the "Agreement"), retroactive to January 1, 2005. (*Id.* ¶¶ 18–19). Under the terms of the Agreement, Defendant agreed to pay OS a "$0.04/lb commission on all E/M sales up to 3500 metric tons ["M/T"] ([Exxon Mobil] contract amount)" as well as provide OS a "[r]ebate of $0.017/lb on all volume as long as a minimum of 8000 M/T are purchased per annum." (*Id.* ¶¶ 21–22). Additionally, Isochem agreed to pay for all freight, duty and storage costs from the Isochem facilities in Sarina and/or Lavera on all sales of 2-EHN to Exxon Mobil up to 3500 M/T. (*Id.* ¶ 23). Shortly thereafter, as market conditions began to deteriorate, representatives of Eurenco[2] began claiming that the rebate under the Agreement only applied to 2005 and not 2006 as previously negotiated by the parties. (*Id.* ¶¶ 24–40). Additionally, around this time, the parties began disputing the price that Innospec was required to pay Eurenco for 2-EHN in 2006 and in subsequent years. (*Id.* ¶¶ 41–45). In the course of these exchanges, Plaintiff alleges it was advised that Innospec and Isochem would "sort [the rebate issue] out after we get the pricing issue resolved." (*Id.* ¶ 46).

On December 12, 2005, the relevant parties met to discuss the disputed pricing and rebate issues. (*Id.* ¶ 48). In the course of that meeting, representatives of Eurenco advised Innospec that Isochem allegedly read the Agreement to require Innospec to pay Isochem almost $400,000 in commissions. (*Id.* ¶ 49). Innospec allegedly denied this interpretation of the Agreement and reserved its rights to seek additional payments of amounts owed. (*Id.* ¶ 50).

Following that meeting, the parties continued to engage in negotiations concerning the underlying pricing relationship and the scope of the Agreement. Although Innospec alleges that it carried "a belief that Innospec and Isochem/Eurenco might come to some form of resolution or

---

[2] Eurenco, as part of the SNPE Group of Companies, manufactures 2-EHN. (*Id.* ¶ 9).

an arrangement that would resolve all outstanding issues between them, which would include the issues related to the Exxon Mobil Commission Agreement," (*id.* ¶ 50), such an agreement never materialized.

Based on these events, on February 23, 2010, Innospec initiated an arbitration proceeding before the International Chamber of Commerce against Eurenco, claiming that it was owed substantial sums under its distribution agreement. Shortly thereafter, on March 31, 2010, Innospec commenced the present action [1]. Isochem moved to stay this action pending the outcome of the European arbitration, and, in the alternative, moved to dismiss a number of claims in the Complaint [10]. The Court denied the request to stay the action pending arbitration, but dismissed certain disputed counts [20]. On November 11, 2011, Plaintiff filed a Motion to Amend/Correct its Complaint [45]. On November 14, 2011, Magistrate Judge Bongiovonni granted the Motion [48]. Subsequently on November 15, 2011, Plaintiff filed its Amended Complaint. On December 19, 2011, Isochem filed a motion to dismiss. In the Motion and subsequent reply brief [55], Defendant argued: (1) that decision not to pursue relief for many years prevents Innospec from asserting any claim for which relief could be granted; and (2) that Innospec has failed to demonstrate that its claim is plausible or that it has any possibility of success as Innospec's own documents purportedly demonstrate that Isochem paid the full amounts owed in 2005 and that the parties terminated their agreement in 2006. (Def.'s Reply Br., at 1–3). Plaintiff Innospec opposed the Motion, contending: (1) that it had properly and sufficiently stated its claims against Isochem; and (2) that Defendant had ignored the appropriate standard in its Motion by introducing affidavits and documents not relied upon in the Amended Complaint and not tested in discovery. (Pl.'s Opp'n to Mot. to Dismiss, at 1–2) [53]. On March 5, 2012, the Court on its own motion converted the motion to dismiss into a motion for summary judgment, ordered additional discovery for such purpose, and gave both parties the opportunity

to submit simultaneous letter briefs addressing the now-converted motion for summary judgment. *See* (Mem. Op. & Order of March 5, 2012). On May 11, 2012, the parties submitted such briefs.

In its May 11, 2012 submission, Defendant maintains that the evidence adduced during discovery establishes that: (1) Innospec recognized, from the outset, that under the Agreement it would share a portion of the profit margin created by the difference between the price at which Exxon Mobil purchased 2-EHN from Isochem and the price at which Isochem sold that product to Innospec; (2) Innospec itself twice calculated the exact amounts that were owed under the Agreement, concluding that $394,242.64 was due to Isochem; (3) Innospec admitted that it "conceded" to excluding Exxon Mobile volume from a rebate it received; and (4) Innospec took a credit that reflected the payment of the amounts that it calculated under the Agreement without protest or any reservation of rights. (Def.'s Letter Br. at 1–2). Moreover, Defendant contends the evidence is equally clear that: (1) Innospec's internal documents show that only one day after the parties met to discuss whether to continue under the Agreement for 2006, Innospec began calculating that it would make more money without the Agreement and without a rebate; (2) Innospec never calculated any amounts due in 2006 under the Agreement; (3) Innospec never requested payment for 2006 under the Agreement; (4) Innospec never reserved its rights, or otherwise protested, as to any claimed payment; and (5) an executive of Innospec seemed to concede that Innospec had waived its claim to recover under the Agreement stating in a 2007 correspondence to Eurenco "[i]n Q4 2005, Innospec agreed to terminate all rebates for specific accounts [and] conceded on the mis-interpretation of the ExxonMobil commission." *See* (*id.* at 2 (citing Hyon Decl. Ex. V at INNOSPEC 000000067)).

Plaintiff by contrast argues that genuine issues of material fact exist that preclude summary judgment, including: (1) Whether Isochem fully paid Innospec pursuant to the Agreement; (2) Whether Innospec was required to transfer profit margins to Isochem pursuant to the Agreement; (3) Whether the rebate provision of the Agreement applied to all 2-EHN volume sold by Innospec in North America in 2005 and 2006; (4) Whether the parties agreed to terminate the Agreement in the last quarter of 2005; and (5) Whether the March 2006 return of profits was calculated under duress. (Pl.'s Letter Br. at 2).

## II.   LEGAL STANDARD

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Properly applied, Rule 56 will "isolate and

dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323–24.

### III.   DISCUSSION

Defendant contends that it is entitled to summary judgment because Innospec's conduct suggests it had abandoned the contract or waived its claim. After reviewing the record before it, the Court agrees.

Under New Jersey law, a contract "will be treated as abandoned where one party acts in a manner inconsistent with the existence of the contract and the other party acquiesces in that behavior." *Dorchester Manor v. Borough of New Milford*, 670 A.2d 600, 603–04 (N.J. Super. Ct. 1994), *aff'd*, 670 A.2d 576 (N.J. Super. Ct. App. Div. 1996) (citations omitted). As described above, under the terms of the Agreement, Innospec was supposed to send freight, duty, and shipping costs to Isochem for reimbursement each quarter. Isochem notes that Innospec never sent the freight and shipping costs to Isochem for any quarter of 2006, as required by the terms of the Agreement. *See* (Slick Aff. ¶ 45). Although the parties appeared to have periodically negotiated pricing for 2-EHN and shared the benefits and costs of the fluctuation of 2-EHN pricing under their previous distribution agreement, reviewing the record the Court does not find any documentation that would suggest that the parties continued to perform under the Agreement or that the parties discussed any amounts due and owing under the Agreement for either 2005 or 2006. *See also* (Patrick McDuff Aff. at 11 ("in light of the December 12, 2005 meeting I believed that any further communications regarding the Agreement would be futile and a wasted effort because Isochem had already announced that it would not pay any rebates for 2006 . . . . I also believed that the continued requests for payment further strain an already hostile relationship") [67]. Such conduct suggests that Innospec had abandoned the contract. *See Anstalt v. F.I.A. Ins. Co.*, 749 F.2d 175, 178 (3d Cir. 1984) (when rescission or abandonment of a

contract "is to be implied from the conduct of the parties, the actions must be positive and unequivocal.").

Moreover, Innospec's failure to timely assert its alleged claims under the Agreement operate as a waiver of its breach of contract claim. It is well settled that waiver may occur when a promisor manifests the intent not to require a promisee to strictly comply with a contractual duty. *See, e.g., Moore's Trucking Co. v. Nat'l Starch & Chem.*, No. 93–4750, 1994 WL 741081 (D.N.J. Sept. 27, 1994); *Nat'l Westminster Bank, U.S.A. v. Yaeger*, 130 B.R. 656, 675 (S.D.N.Y. 1991), *aff'd*, 962 F.2d 1 (2d Cir.1992) ("It is well-established that where a party to an agreement has actual knowledge of another party's breach and continues to perform under and accepts the benefits of the contract, such continuing performance constitutes waiver of the breach."); *Lone Mountain Prod. Co. v. Natural Gas Pipeline Co.*, 710 F. Supp. 305, 311 (D. Utah 1989) ("The applicability of waiver depends on the intent of the non-breaching party. If he has intentionally relinquished a known right, either expressly or by conduct inconsistent with an intent to enforce that right, he has waived it and may not thereafter seek judicial enforcement." (citing *Saverslak v. Davis–Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir. 1979), *cert. denied*, 444 U.S. 1078 (1980))). As the United States Court of Appeals for the Third Circuit has noted, New Jersey courts have held that a waiver occurs when a party dispenses with the performance of something which he or she has a right to exact, or does or forbears to do something inconsistently with the right or the intention to rely on it. *Evvco Leasing Corp. v. Ace Trucking Co.*, 828 F.2d 188, 195 (3d Cir. 1987) (citations omitted). Waiver may be inferred from silence or acquiescence as from other conduct or inaction. *See id.* at 196 (citing *Midwest Maint. & Constr. Co. v. Vela*, 621 F.2d 1046, 1048 (10th Cir.1980); *Minnesota Mining & Mfg. Co. v. Kirkevold*, 87 F.R.D. 324, 335 (D. Minn. 1980)); *see also N.J. Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt.*, 264 F. Supp. 2d 165, 177 (D.N.J. 2003) (where a party "fails to declare a breach of contract, and continues to

perform under the contract after learning of the breach, it may be deemed to have acquiesced in an alteration of the terms of the contract, thereby barring its enforcement." (citations omitted)).

As noted above, this dispute stems from commissions allegedly due and owing from a period roughly four years before the filing of the first Complaint. Rather than assert its claim to the full amounts at some point reasonably soon after Isochem indicated its unwillingness to continue the Agreement in December 2005, Plaintiff appeared to renegotiate its position and in later documentation appeared to concede to Isochem's interpretation of the Agreement. Plaintiff continued to do business with Isochem, billed and accepted payment under terms it now asserts were made under duress, but has failed to provide any contemporaneous documentation that suggests that such payments were made under protest or that Innospec felt that additional amounts were due and owing. Indeed, the record suggests that to this day Plaintiff has not calculated the amounts allegedly due under the Agreement, nor provided such calculations to the Defendant.

Applying the law of waiver to these facts, the Court concludes that Plaintiff has waived any claim that it may have had to additional amounts owing under the commission structure underlying the Agreement. Plaintiff manifested its acquiescence to the rescission of the contract because it: (1) continued to serve as Defendant's distributor throughout the next four years without indicating that such participation was without prejudice to its asserting its rights under the Agreement; (2) failed to submit receipts as provided for under the Agreement; and (3) continued to bill and accept the Defendant's payments without protesting the amounts. The Court finds such conduct on Plaintiff's part contradictory to a claim that Defendant breached the parties' Agreement, and it leads this Court to conclude that Plaintiff voluntariy relinquished its claim to any outstanding commissions owed. No reasonable jury could find otherwise.

These facts also warrant the conclusion that Plaintiff is estopped from now seeking to hold Defendant to the Agreement. Estoppel operates to preclude a party from asserting a right to which it otherwise might be entitled when its actions would render its exercise inequitable. *See Moore's Trucking Co.*, 1994 WL 741081, at *4 (citing *Hosp. Computer Sys. v. Staten Island Hosp.*, 788 F. Supp. 1351, 1358 (D.N.J.1992)). While the same facts may lend themselves to application of waiver and estoppel, the latter doctrine focuses not on the intent of the promisor, but rather on the effect of the promisor's conduct on the promisee. *See id.* Therefore, even if the intent element of waiver is missing, estoppel may arise from apparent waiver if the defendant has reasonably inferred from plaintiff's behavior that there has been a waiver. *Id.* at 1358–59. The party asserting the defense of estoppel bears the burden of proving the following elements: "(1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment." *U.S. v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987).

Applying these elements, the Court finds that the doctrine of estoppel bars this action. Although the Court does not believe that Plaintiff necessarily intended to misrepresent its current position with respect to the Agreement, Plaintiff's silence and acceptance of payment unsurprisingly led Defendant to assume that it was honoring in full its obligations to Plaintiff. The Court finds that Defendant's reliance was reasonable under the circumstances given the parties' extensive contacts during the course of business and Plaintiff's history of documenting its protests in other disputes. *See, e.g.*, (Hyon Decl. Ex. S, at 1 (correspondence noting that the surcharge was included "under protest")). Moreover, arguably, this reliance was to Defendant's detriment as it foreclosed Defendant from seeking out a new distributor rather than to continue its association with Plaintiff. *See Moore's Trucking Co.*, 1994 WL 741081 at *4. In light of the foregoing, the Court finds that a jury could reach only one conclusion—that Plaintiff's action is barred by the doctrines of abandonment, waiver, and estoppel. The Court therefore will grant

9

Defendant's motion for summary judgment and the above-captioned action will be dismissed in its entirety.

### IV. CONCLUSION

For the reasons set forth above,

IT IS on this 21st day of August, 2012,

ORDERED that Defendant Isochem North America, LLC's ("Isochem") Motion to Dismiss [docket # 51] the First Amended Complaint which has been converted into a Motion for Summary Judgment, *see* (Mem. Op. & Order of March 5, 2012) is hereby GRANTED; and it is further

ORDERED that JUDGMENT shall be entered in favor of Defendant Isochem North America, LLC and against Plaintiff Innospec Fuel Specialties, LLC; and it is further

ORDERED that this case is CLOSED.

_____
ANNE E. THOMPSON, U.S.D.J.